UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LASHANA WEAVER,

        Plaintiff,

 - versus -

BENTLEY WARRINGTON and the CITY OF NEW YORK DEPARTMENT OF EDUCATION,

        Defendants.

MEMORANDUM AND ORDER

14-CV-7097 (JG)(VVP)

A P P E A R A N C E S:

 THE LAW OFFICE OF RENÉ MYATT
  204-04 Hillside Avenue, 2nd Floor
  Hollis, NY 11423
 By: René Myatt
  *Attorney for Defendants*

 ZACHARY W. CARTER
  Corporation Counsel of the City of New York
  100 Church Street, Room 2-140
  New York, NY 10007
 By: Daryl Gregory Leon
  *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

  Plaintiff Lashana Weaver brings this action against Bentley Warrington and the New York City Department of Education ("DOE") under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law ("NYSHRL") for wrongful termination from her job, and under 42 U.S.C. § 1983 for malicious prosecution and false arrest. She also brings several state law causes of action, including defamation and negligence. Defendants have moved to dismiss Weaver's

claims pursuant to Federal Rule of Civil Procedure 12(c). I heard oral argument on Friday, June 26, 2015. For the reasons stated below, defendants' motion is granted.

BACKGROUND

Weaver alleges the following facts, which I assume to be true for purposes of this motion to dismiss. Weaver worked from December 3, 2012 to April 26, 2013 for the DOE at Walt Whitman Middle School 246 in Brooklyn, where defendant Bentley Warrington served as principal. Compl. ¶ 12. She was a "merited and highly respected employee" and a "favorite amongst the students." Weaver thought highly of Warrington, who was her supervising principal. *Id*. ¶¶ 13, 21.

Warrington hired a friend of Weaver's based on Weaver's recommendation, and at some point thereafter there was gossip among the teachers that Warrington had "an interest in Ms. Weaver's friend," which the "teaching community fe[lt] . . . [was] inappropriate." *Id*. ¶¶ 14-15. Weaver's friend informed Weaver about Warrington's "interest in her," and Weaver told her friend that because Warrington was an older man and "in a position of power," the situation was "inappropriate and unprofessional." *Id*. ¶ 16. The friend relayed this information to Warrington, at which point Warrington began a "course of retaliation" against Weaver. *Id*. ¶ 17. The retaliation Weaver experienced included receiving an "unsatisfactory" rating and being "admonished" when a student took her cell phone. *Id*. ¶ 18.

In April 2013 Warrington found a photograph of Weaver on a website that pertained to "two prior arrests for minor offences" that occurred in 2008 and 2009, while Weaver was in college. *Id*. ¶ 19. Warrington attempted to terminate Weaver's employment due to this discovery, but was unsuccessful. *Id.* Then, on April 26, 2013, Warrington terminated Weaver

2

by telling her that her teaching services were "no longer needed . . . because of budget cuts." *Id*. ¶ 20.

Weaver was concerned about her career, and, following the suggestion of a colleague, she went to talk with Warrington. During this talk, Warrington "t[ook] out his cell phone, h[eld] it close to Ms. Weaver's face and beg[an] snapping pictures of her." Next, Weaver "move[d] [Warrington]'s arm from her face" and then left to "make a complaint at the local precinct." At the precinct, Weaver was told that the matter did not "warrant any action." *Id*. ¶¶ 23-25. Weaver then spoke with an attorney to "lodge her complaint." *Id*. ¶ 26.

Thereafter, Weaver was arrested. *Id*. ¶ 28. Weaver claims that she reached out to the DOE, which said that because of her arrest, Weaver had "violated certain [DOE] codes" and therefore the DOE "would not entertain [Weaver's] perspective of what had transpired." *Id*. ¶ 29. Weaver filed a complaint with the New York State Division of Human Rights ("NYSDHR"), and the DOE responded that "teachers have a right to indulge in romantic relationships with each other," and that the "situation did not warrant investigation on their part" for this reason. *Id*. ¶ 30. Thereafter, the NYSDHR gave Weaver a "Right to Sue" letter because Warrington was "operating from a position of power." *Id*. ¶ 31.

## DISCUSSION

A.  *Standard of Review*

In deciding a motion under Rule 12(c), I must "assume the truth of all well-pleaded factual allegations, draw all inferences in the light most favorable to the plaintiff[], and grant the motion only if the complaint so viewed fails 'to raise a right to relief above the speculative level.'" *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to survive this

standard, which is the same as that for a motion to dismiss pursuant to Rule 12(b)(6), it is not necessary that the complaint include "detailed factual allegations," *Twombly*, 550 U.S. at 555; however, it must contain more than "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

B.  *The Title VII, Section 1981, and NYSHRL Claims*

    1.  *The Applicable Legal Framework*

Claims under Title VII, 42 U.S.C. § 1981, and the NYSHRL are all analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). Retaliation and discrimination-based wrongful termination claims are also subjected to the *McDonnell* analysis. *See Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 73 (2d Cir. 2014). Under the *McDonnell Douglas* framework, "a plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If the plaintiff is able to satisfy this initial burden, the burden then shifts to the defendant to "articulate a legitimate, clear, specific and non-discriminatory reason" for its action. *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

Because NYSHRL and Section 1981 claims are subject to the same standard as Title VII claims, I will consider them together, except where otherwise noted. *McGill*, 600 F. App'x at 790. However, I note at the outset that Weaver's claim for discrimination under § 1981 must be dismissed because § 1981 claims are limited to race-based discrimination and retaliation. Plaintiff does not allege any race-based discrimination, and the facts alleged in her complaint, even when construed in the light most favorable to her, do not yield an inference of racial discrimination by the defendants. *See* 42 U.S.C. § 1981.

2. *Prima Facie Case*

To establish a prima facie case for wrongful termination, "a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Dupree v. UHAB-Sterling St. Hous. Dev. Fund Corp.*, No. 10-CV-1894 (JG)(JO), 2012 WL 3288234, *4 (E.D.N.Y. Aug. 10, 2012) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010)). The standard for a prima facie case of retaliation is similar; Weaver must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotations omitted).[1] I will consider Weaver's wrongful termination and retaliation claims together in this discussion because I find they fail to survive a motion to dismiss for the same reasons.

At this stage of the case, Weaver is not required to allege specific facts establishing a prima facie case of discrimination under the *McDonnell Douglas* framework. *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 9 (2d Cir. 2013). I must ask "only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case." *See Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (internal quotations omitted). Even though Weaver is not required to allege specific facts establishing all the elements of the *McDonnell Douglas* prima facie case, "these elements can still provide a helpful outline of what is necessary to render a plaintiff's claims for relief plausible." *Id.* (internal quotations and alterations omitted).

---

[1] Although Weaver did not allege retaliation as a separate claim, she asserts facts in her complaint alleging Warrington subjected her to a "course of retaliation" that led to her receiving an unsatisfactory rating and, eventually, to her termination. *See* Compl. ¶¶ 17-18, 31, 33.

3. *Application to Weaver's Claims*

Weaver has not pled facts sufficient to withstand a motion to dismiss. Even assuming she has sufficiently alleged the first three elements of a prima facie case for wrongful termination or retaliation, Weaver has not alleged facts that support an inference that her termination or unsatisfactory rating had any connection to her membership in a protected class or her engaging in protected activity. Indeed, Weaver's complaint contains no mention of discrimination as a result of her gender. Weaver alleges merely that Warrington gave her an unsatisfactory rating and eventually terminated her because Weaver told her friend it was inappropriate for her friend to have a romantic relationship with Warrington. *See* Compl. ¶¶ 16-18, 20, 33. *See Anderson v. N.Y.C. Dep't of Corr.*, No. 12-CV-4064 (RJS)(RLE), 2013 WL 5229790, at *6 (S.D.N.Y. Sept. 17, 2013) (dismissing plaintiff's hostile work environment claim because "[e]ven considering her protected characteristics as a woman, there is no indication that her gender was a motivating factor in the creation of the alleged hostile work environment"). Although Weaver asserts that she was discriminated against based on her gender in her opposition brief, *see* Pl. Opp. Br. at 14-15, no such factual allegation appears in her complaint and it is not properly considered on this motion.

Moreover, knowledge of an alleged affair – even if it resulted in disciplinary action on the part of the defendants – does not fall under the purview of Title VII or the NYSHRL, neither of which is meant to police interpersonal disputes in the workplace. *See Gorley v. Metro-N. Commuter R.R.*, No. 99-CV-3240 (NRB), 2000 WL 1876909, at *7 (S.D.N.Y. Dec. 22, 2000) ("Title VII provides relief only for . . . discrimination, not fickleness."), *aff'd*, 29 F. App'x 764 (2d Cir. 2002); *see also DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986) ("[V]oluntary, romantic relationships cannot form the

6

basis of a sex discrimination suit under [Title VII]."); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1982) ("Personal animosity," even if it did exist between the plaintiff and the defendants, "is not the equivalent of sex discrimination.").

    4. *Individual Liability*

    Additionally, to the extent Weaver asserts Title VII claims against Warrington, those are dismissed because individual defendants may not be held liable under Title VII. *See, e.g.*, *Patterson v. Cnty of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that individuals are not subject to liability under Title VII.") (internal quotations omitted). NYSHRL claims against an individual are permissible. *See E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 523 (E.D.N.Y. 2014) (noting claims against individuals may proceed under the NYSHRL "(1) if the defendant has an ownership interest in the employer or has the authority to hire and fire employees, . . . and (2) if the defendant aided and abetted the unlawful discriminatory acts of others") (internal quotations and citation omitted). However, for the same reasons articulated above, Weaver has not alleged facts sufficient to withstand a motion to dismiss with respect to her NYSHRL claim for discrimination.

C. *The Section 1983 Claims*

    Section 1983 serves to impose civil liability on any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. Notably, § 1983 "does not create" a substantive "federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005). "[T]he core purpose of § 1983 is 'to provide

compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. New York City Health and Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).

        1.     *The Malicious Prosecution Claim*

Weaver's § 1983 claim for malicious prosecution must allege a violation of her rights under the Fourth Amendment and the elements of a claim for malicious prosecution under New York law. *See Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010). Those elements are: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotations omitted). The requirement for alleging a violation of Weaver's Fourth Amendment rights is met by alleging a "sufficient post-arraignment liberty restraint." *Rutigliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009) (internal quotations omitted).

As for the first element, "initiation" of a prosecution cannot consist of "the mere reporting of a crime to police and giving testimony." *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (quoting *DeFilippo v. Cnty. of Nassau*, 583 N.Y.S.2d 283, 284 (2d Dep't 1992)). Instead, "[a] defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." *Watson v. Grady*, No. 09-CV-3055 (KMK), 2010 WL 3835047, at *5 (S.D.N.Y. Sept. 30, 2010). Weaver has alleged that Warrington filed "false" charges against her for attempted robbery and attempted grand larceny, and he "knew the allegations were untrue." Compl. ¶ 38. This amounts to an allegation that

Warrington knowingly provided false information and is sufficient to meet the first element of this claim.

As for the second element, Weaver states that the prosecution was terminated in her favor when all charges against her were dismissed by the prosecution on August 5, 2014. Compl. ¶ 38. While a dismissal of the charges against the accused often qualifies as a "favorable termination" for purposes of a malicious prosecution claim, there are some circumstances in which it does not, such as when the dismissal was the result of a compromise with the accused. *See Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (discussing dismissal as a result of such a compromise). Weaver's complaint does not allege sufficient facts to discern the circumstances surrounding the dismissal of the criminal charges against her. In an amended complaint, she should allege additional facts that make clear whether the dismissal was under circumstances "not inconsistent with [her] innocence." *See id.*

2. *The False Arrest Claim*

I will assume for the purposes of this motion that Weaver asserts both a state claim for false arrest and a federal constitutional claim. The Fourth Amendment's ban on unreasonable searches and seizures requires that any arrest made in the absence of a warrant be grounded in probable cause to believe that some offense is being (or has been) committed by the arrestee. *See, e.g.*, *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (citing cases). A warrantless arrest in the absence of probable cause directly violates the Fourth Amendment. "[A] plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (internal quotations omitted).

As in the context of malicious prosecution, "[t]o be liable for false imprisonment, the plaintiff must prove that the defendant *intended* or *instigated* the confinement of the plaintiff." *Vlaich v. Staiano*, No. 12-CV-1758 (GLS)(RFT), 2014 WL 2927161, at *3 (N.D.N.Y. June 27, 2014) (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 256-57 (2d Cir. 1997)) (emphasis in original). "Merely providing information to law enforcement authorities," who thereafter "exercise their own judgment whether or not to arrest" an individual is insufficient to incur liability under a claim of false arrest under New York law. *Vlaich*, 2014 WL 2927161, at *3. Indeed, the plaintiff needs to go so far as to demonstrate that the defendant "affirmatively induced" the arrest by "taking part in the arrest and procuring it to be made . . . to the point where the officer [was] not acting of his own volition." *Id.* (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 13-14 (2d Cir. 1998)).

Here, Weaver is not alleging that Warrington "took part in the arrest" so much so that the officer was not acting of his own volition. Neither has she alleged that Warrington "made the decision to arrest or induced the police to arrest." *See Vlaich*, 2014 WL 2927161, at *4. Instead, in addition to the allegations that comprise her malicious prosecution claim, Weaver alleges only that there was a "lack of probable cause" for her arrest. *See* Compl. ¶ 41. *Vlaich* was decided at the summary judgment stage, and the question was whether the plaintiff "proved" the elements of those claims. On this motion to dismiss, I decide only whether Weaver's allegations are sufficient. However, the elements of the claim remain the same. Therefore, as explained above, Weaver's allegations are insufficient to state a claim for false arrest.

D.  *The Additional State Law Claims*

Because Weaver has failed to state a prima facie claim with respect to her federal causes of action, I decline to exercise supplemental jurisdiction over the additional state-law

claims in her complaint. *See* 28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction" over related state law claims if the court "has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted. Weaver's request to amend her complaint is granted, as Federal Rule of Civil Procedure 15(a) requires that leave to amend "be freely given when justice so requires." *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

So ordered.

John Gleeson, U.S.D.J.

Dated: August 4, 2015
      Brooklyn, New York