# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW YORK
### EASTERN DIVISION

LASHANA J. WEAVER, as the Moving   Party
a/k/a LASHANA WEAVER,


                    Plaintiff,                          Civil Action No. 14-CV 7097(ENV)(ST)

vs.

BENTLY WARRINGTON,
And
KUZALIWA CAMPBELL,
And
KENROY JOHNSON,
And
DETECTIVE DANIEL YOUNG
And
CITY OF NEW YORK,
And
CITY DEPARTMENT OF EDUCATION,
And
CITY OF NEW YORK POLICE DEPARTMENT


                    Defendants,



**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE**
**TO AMEND AND SUPPLEMENT COMPLAINT; AND**
**FOR JOINDER OF ADDITIONAL DEFENDANTS**

COMES NOW Plaintiff Lashana J. Weaver a/k/a Lashana Weaver, as pursuant to Federal Rules

of Civil Procedure 4(d), 15(a)(2), 15(c)(1)(C)(i), 15(d), 17(a), 20(a)(2), 25(d) respectfully files

this brief in support of her Motion for Leave to Amend and Supplement Complaint; and for Joinder of

Additional Defendants ("Motion for Leave"), showing this Court as follows:

## INTRODUCTION

After review of the Transcript of Civil Cause for Oral Argument; Plaintiff realized previous

counsel, Attorney Rene Myatt conceded to the "Malicious Prosecution" claim solely surviving

dismissal, without an elaborate defense as to why the claim(s) should remain, nor did she ask for

an adjournment to properly discuss with the client her decision regarding the matter of agreement

or objection thereof. She did not contest, and decided all was fair, without the client's knowledge

or consent. Not negating the Judge presiding over the case at the time's decision, however; Plaintiff

was appalled and grandly disappointed with Myatt's unwillingness to argue knowledgeably and

affectively.

Plaintiff, appreciates Judge John Gleeson for relentlessly trying to insist she amend, and

also giving insight that individuals that were merely listed as "comparators," should've been listed

as "defendants," due to his observance of Myatt stating they in fact, sexually harassed her client.

Ms. Weaver was baffled that she didn't ask for relief to amend, time to consult options with her

client, and thus restate the claim, especially since what Judge Gleeson advised as being an

additional cause of action, was initially one of the pre-discussed, and agreed upon causes of action.

Plaintiff, found it to be a disservice that an attorney entrusted and financially contracted to seek

justice, decided that the Judge's mentioning of the aspect that involved (incorporating those who

sexually harassed her client into the claim) was NOT a part of the matter, and thus in her words,

"That's for another time, another situation. I wasn't involved there."(See Transcript of Civil Cause

for Oral- Argument a true copy is attached hereto as Exhibit 1) . The sexual harassment claim was

previously mentioned in the "Plaintiff's Affidavit."(See Doc.5; 12/18/2014)

## STATEMENT OF FACTS

Plaintiff is presenting this Memorandum in Support of Motion to Amend and Supplement Complaint in order to add defendants and "reinstate" the following claims: Wrongful Termination, False Arrest, False Imprisonment, False Accusation, and Retaliation. Furthermore, Plaintiff would like to "incorporate", per original request to the previous counsel (Myatt), the claims of Discrimination regarding: Sexual Harassment, Harassment, Equal Pay/Compensation, and the Protective Action/Activity of "Whistleblowing" per the EEOC complaint filed on the Plaintiff's behalf by The Law Offices of Rene' Myatt. Uncertain, as to how the City of New York was alleviated from the remaining cause of action, being Malicious Action. When the complaint was filed, Ms. Myatt, stated that The City of New York's Department of Education is a part of a municipality governed by the City and that when referenced she would use the abbreviations "CITY" and "DOE" in all proceedings both written and verbalized, however throughout the original complaint the attorney presented majority of her argument against the abbreviated "DOE".

The confusion, drawn by the inference, to join the defendants as a municipality led to the "CITY" being omitted from being a defendant. In essence, the attorney perhaps should have utilized the, "CITY" to infer the connection of there being a municipality, rather than "DOE". Solely, stating the "DOE" alluded to those presiding over the case and the defense to seemingly believe, the cause of action of "Wrongful Termination" and all state claims were subjected to the "DOE" and "Bently Warrington", and not the "CITY" as an entity, or moreover municipality; that represents and governs several departments that are a part of this action. ALL causes of actions were brought against the City of New York and Bently Warrington. Plaintiff, is requesting at this time the City of New York be readmitted as proper defendants, as well as the correct spelling of

Defendant "Bently Warrington's name, with the omission of the "E" in his first name (Bently).

Equitable tolling is a legal principle evolved from the common law of equity. Equitable tolling

states that the statute of limitations will not bar a claim if the plaintiff, despite reasonable care and

diligent efforts, did not discover the injury until after the limitations period had expired (See Dixon

vs. United States, 1999. App. LEXIS 13215 (10th Cir. Okla. 1999). The principle for equitable

tolling was described in Dixon v. United States...

    The doctrine of equitable tolling means only that the running of the statute is suspended, not
that the limitations period begins over again. Thus, even if the limitations period was suspended
during the pendency of the initial suit, it would have resumed after the first suit was dismissed.
Equitable tolling also means that a person is not required to sue within the statutory period if he
cannot in the circumstances reasonably be expected to do so. [Dixon v. United States, 1999 U.S.
App. LEXIS 13215 (10th Cir. Okla. 1999)].

    There are previous claims, that were initially alleged, that a request to reinstate will not be

submitted ie. Libel, slander, defamation. They will remain omitted as they do not appear as

purposeful regarding this matter. When Plaintiff retained Attorney Myatt to represent her, she was

to file a complaint with the EEOC's Human Rights Division, citing the aforementioned, per the

initial consultation and contract. Attorney Myatt advised that she would reference all information

that was plausible for any and all claims sited, based on the facts and evidence, that was presented

to her firm; per discussions, documents, recordings, as well as; an outline of the events that

occurred, listed as an exhibit that is attached, referred to as a "Timeline of Events." All who were

in direct violation of Plaintiff's rights, and/or were participants in any form of alleged

discriminatory actions and practices, would be listed and made a part of the complaint at all phases

of the filing processes, ie. The Complaint and any civil suit that followed. Although, several

defendants (The City of New York Police Department, Assistant Principal Kuzaliwa Campbell,

Assistant Principal Kenroy Johnson, and Detective Daniel Young) were omitted from the

complaint, without Plaintiff's consent by Attorney Myatt. It is the Plaintiff's belief that the case can fairly move forward, without those parties being listed individually, since they are being represented moreover by the entity(s) for which they are affiliated; The City of New York (CITY).

As you are aware, Plaintiff relieved Attorney Myatt of her retention, after her ineffective counseling, resulted in the dismissal of the aforementioned claims, a few state claims that have been omitted, the lack of incorporating certain information into the claim (ie. Defendants and claims), and upon my personalized review of incorrect and correct information being articulated inadequately, and thus the nulling of her written contract to appeal the decision to dismiss. ("[G]enerally a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."). The District Court dismissed the time-barred claim. All defendants listed had prior knowledge both formally and informally they were parties, involved in a complaint directly part of this Civil Action, and all proceedings prior to the lodging of this complaint. Each defendant was involved and assisted in several phases of the wrongful termination, malicious prosecution, unpaid wages, harassment, sexual harassment, and false arrest of the Plaintiff; of which grievances, complaints, and suits were filed on them; during differing stages.

## I      IDENTIFICATION OF THE ADDITIONAL DEFENDANTS.

As an initial matter, Kuzaliwa Campbell and Kenroy Johnson were listed as witnesses in Response to Defendants' Rule 26(a)(1)(A)(i); (See Defendants' Rule 26(a) Initial Disclosures Pursuant to F.R.C.P. 26(a), 1-2, a true and correct copy of which is attached hereto as Exhibit A.) In Plaintiff's Memorandum of Law in Support of her Opposition to Defendants' Motion to

Dismiss the First Amended Complaint; Plaintiff's counsel stated, Kuzaliwa Campbell "sexually

harassed," Plaintiff while teaching at Walt Whitman Middle School (See Mem. of Law in Supp.

of her Opposition to Defendants' Motion to Dismiss the First Amended Complaint Pursuant to

Fed. R. Civ. P. 12(b)(6), at pg.10).

On October 1, 2015; at a Civil Cause for Oral Argument, the Honorable Judge John

Gleeson, mentioned Plaintiff's counsel should list one or both Johnson and Campbell as

"defendants" in the Civil Cause of Action for "sexual harassment." So in essence the Judge

believed and advised sex discrimination was an incorrect inference. Attorney Myatt, listed in the

complaint and stated during her argument; the two were merely, "comparators," used to

demonstrate the claim of "sex discrimination," although Judge Gleeson insisted otherwise (See

Transcript of Civil Cause for Oral- Argument a true copy is attached hereto as Exhibit 1.)

Therefore, Kuzaliwa Campbell as a defendant represented by the City of New York, was

made aware of allegations of sexual harassment; (1) during the primary reporting action Plaintiff

conducted: when notifying several school-based officials (School Union Rep Mr. Peter; Assistant

Principal Kesha Bascombe, Assistant Principal Kenroy Johnson, and Principal Bently

Warrington), while still within the City's employ, that he (Campbell) sexually harassed her (2)

When United Federation of Teachers' District Official Rick King, informed his Supervisor

Warrington, of Weaver's visit to his office and reporting further to him (3) when the City

contacted him to be a witness in the original complaint. The Complaint made mention of an

allegation sexual harassment for which the City was made aware.  Campbell, made a comment

about Weaver's body parts on several occasions, and even moved to suggest what she liked

sexually in relation to the size of male genitals, with a comparison to paperclips being requested

by Plaintiff. Mrs. Bascombe and Mr. Peter were adamantly seeking a resolution in the sexual

harassment matter; that they advised and moreover, recommended Weaver to speak with District Rep Rick King, after Warrington failed to act.

Kenroy Johnson, as a defendant represented by the City of New York, was made aware of the allegations of Wrongful Termination, Retaliation, and Discrimination when he aided in the causes of actions for which the original complaint was lodged when he… (1) contacted by officials, to be a witness in the original complaint. (2) orchestrated an OPI investigation for Corporal Punishment and Verbal Abuse against Plaintiff, without properly investigating Plaintiff (no statements were given by Plaintiff); (3) Only incorporated statements in the investigation, to the-said allegations named against Plaintiff at that time, from a student Latoya Lawrence and Kuzaliwa Campbell. Plaintiff previously reported this student for theft and deprivation, as well as Assistant Principal Kuzaliwa Campbell; for sexual harassment, yet no actions were taken against either, despite relentless requests made to school officials (4) Did not interview nor take the statement of the other student Hassatou Diallo, who acted in the deprivation and thus was the ONLY unbiased witness to the incident that transpired in the office of Assistant Principal Kuzaliwa Campbell.  (5) Johnson, forged letters and statements to assist in the termination of Plaintiff. (6) he was made aware of a claim of sexual harassment Plaintiff reported (See Defendants' Rule 26(a) Initial Disclosures Pursuant to F.R.C.P. 26(a)); (7) Johnson, was also made aware of a claim of deprivation of Plaintiff's property, yet he didn't investigate.  (8) Johnson assisted in filing the "Unsatisfactory-rating" although he knew the allegation was frivolous, based on his admittance (9) Johnson, admitted to helping his supervisor Mr. Warrington to terminate Plaintiff. (10) Johnson apologized to Plaintiff, in a recorded conversation for the role he played in ALL acts of retaliation, he participated in involving the professional demise of the Plaintiff. (11) Johnson, admitted per a recorded conversation to

Plaintiff; Defendant Warrington, terminated her due to her reporting allegations of sexual

harassment as well as, the insubordinate affair he was having with a fellow colleague/friend of

hers Georgette Reid. (12) Johnson, per recorded conversation to Plaintiff, stated Defendant

Warrington, "Owes you because if it were not for you, he would've been fired." This

acclamation was in response to Plaintiff's reporting to District 17 Rep-Rick King, the sexual

harassment, unpaid wages, discrimination, harassment, and verbal/corporal punishment, some of

which she was a victim to and witnessed while in Warrington's employ. However, she didn't

further the investigation, to avoid the Warrington and Campbell's "alleged firing" according to

Rick King; out of good faith and empathy.. Warrington and Johnson's knowledge per being

informed of Plaintiff's reporting, per a conversation/meeting with King; jumpstarted the chain of

retaliation which led to the request by both parties (Johnson and Warrington), for Plaintiff to

come back to work-after being terminated improperly. The giving of an "Unsatisfactory-rating,

after her "refusal" to comply with their request to return to work after she was terminated for

alleged budget cuts, and forged letters on Plaintiff's work file, citing previous complaints-to back

the unlawful U-rating; followed by false statements given to Grievance Hearing Committee

chairs and the EEOC,, a false arrest, and malicious prosecution.

     In a Human Rights Complaint to the Equal Employment Opportunity Commission

(EEOC) (See Exhibit **2**) lodged by Plaintiff, the City's Department of Education's rebuttal,

attested to Principal Warrington's phoning into the DOE's Office of Special Investigations,

requesting Weaver's termination for his discovery of her mugshots on Google, based upon a

reference by an informant. However, they informed Warrington, that it was not plausible. The

same week, Weaver was terminated for what they (DOE) stated, was Plaintiff's "unwillingness

to report back to Defendant's school", for an investigation of those very mugshots.  The DOE in

their rebuttal, made NO mention or inference of verbal abuse and corporal punishment on a

student, as he later alleged, [was his determining factor to which led to his firing of the Plaintiff];

as being the reasoning of her termination. However, in an uncanny way; they later retracted that

as being the reason for her termination, and cited her "unwillingness to inform officials of the

arrest on November 15, 2013" which jumpstarted this complaint as being the reason. Weaver at

the time had not been employed by the DOE, for 6 months. She was already terminated.

Warrington, per his deposition admitted to informing DOE officials of the arrest and all charges

assessed the next business day. The arrest happened exactly a week from

Matthew McQueen ("McQueen"), counsel-of-record for Bently Warrington, represented

Detective Andrew Young and the City of New York Police Department in connection with his

deposition as a non-party in this action.  Young, was made aware of the allegations of False

Imprisonment, False Arrest, and Malicious Prosecution. Young was requested to testify in a

deposition and produce certain documents as a part of his investigation which led to the arrest

and prosecution to the defense. Based upon his own admission when his deposition was taken,

Detective Young detained and falsely imprisoned the Plaintiff prior to arrest. Young, admitted

that he did not inform Plaintiff of his true reasoning for the visit to her home on November 15,

2013 at approximately 7:45 a.m.

Young, admitted to indicating that he was there to ask questions as a follow-up about a

police report that he received, that week. Although, Plaintiff informed the detective that she had

filed a report with the precinct and was eager to speak about it, and grateful for the haste. Neither

the detective nor his partner informed Plaintiff that their intent was to interrogate about the

Defendant's report, also filed that week and not hers.

Detective Young, "falsely imprisoned" Plaintiff when he... (1) insisted that he could only interview her at the Precinct regarding a police report; and therefore she was mandated to accompany him (2) refused to allow Plaintiff to drive her vehicle behind he and his partners' to accompany them to the station for questioning, citing that she had to ride with them, no exceptions; restricting her ability to freely come and go (3) refused to allow the Plaintiff to access her phone while being questioned. Plaintiff was... HELD INCOMMUNICADO, refused contact with family or friends or counsel. In People v. Neal (2003) 31 Cal.4th 63, 84. Suspect confined incommunicado for more than 24 hours. Refused to honor request to talk to a lawyer, and would not allow contact with mother or brother. Officer said, "you can talk to me, and no one else." Harris v. South Carolina (1949) 338 U.S. 68, 70. During the whole period of interrogation over course of several days he was denied the benefit of consultation with family and friends (4) admitted per his deposition, that he did not read Plaintiff's Miranda Rights, at any point; before, during, and after the interview, nor after she was handcuffed (5) admitted per deposition, it was not a norm standard of his to just show up a suspect's house for questioning, when there's the option to call in advance UNLESS there were special circumstances, significant to his belief that person would be arrested. (6) Young, admitted that he did not call the witness Berline Bastien nor alleged victim Warrington, prior to showing up Plaintiff's residence, to get a formal statement, and that both statements were rendered after the arrest.

Detective Young "falsely arrested" Plaintiff Weaver when he... (1) he did not have a warrant to arrest (2) had not properly investigate the situation prior to arriving at her home (3) Plaintiff's statement was given involuntary due to it being an uninterrupted and lengthy interrogation; an extended interrogation. Plaintiff wasn't allowed phone use and the interview lasted more than 2 hours. In Ward v. Texas (1942) 316 U.S. 547 A confession was signed by

defendant only after he had been arrested without a warrant, taken from his home town, driven

for three days to several different counties, and questioned continuously for those three days. (4)

Young continued to question Plaintiff after the took her phone after admitted to texting her

attorney her whereabouts and what was transpiring. He continued questioning her after she stated

she preferred her lawyer be present.   (5) refused to review (per Plaintiff's request) during

questioning, her police report, once made aware that she was being questioned about the

Defendant's report (6) per his own admission, used solely what he called, Plaintiff's

"spontaneous utterance" to charge her (7) admitted during his deposition that he could not

lawfully charge Plaintiff with a crime based on her statement, especially one given

spontaneously, yet stated that in this case he did. (8) per deposition, stated Plaintiff's charges

increased and additional were added as a result of a phone interview he orchestrated with

Warrington, while Warrington was at work; and thus hours after he arrested and placed Plaintiff

in a holding cell (9) He never received any evidence of an assault besides Warrington's

statement until weeks after the arrest, when Warrington emailed the detective pictures he took at

his home of supposed injuries to his lip and nose. (10) Admitted during deposition, to not finding

it odd that Warrington's statement over the phone drastically contradicted the statement given

the night of the incident to the intake officer at the precinct.

  All were given to the defense as a part of their Secondary Supplemental Disclosures. In

these disclosures, there's a report wherein a witness to the defense, and thus the only witness to

see the incident that led to the incident on November 8, 2013, that resulted in the arrest of the

Plaintiff. Berline Bastien attested in her statement to seeing an "altercation" between Warrington

and Weaver, on the night of the incident which later led to Plaintiff's arrest and prosecution. She

agreed that Warrington, was involved in a physical altercation, and was not solely assaulted. He

did strike the Plaintiff. Johnson and Young are accomplices of Warrington; Johnson and

Campbell are referred to in the Complaint, Young referred to in a separate complaint (CCRB)

and should, therefore, be identified as the City of New York Defendants and joined as party

defendants to this action.

## II. ACTIONABLE CONDUCT OF THE CITY OF NEW YORK DETECTIVE YOUNG KUZALIWA CAMPBELL KENROY JOHNSON and FACTS DISCOVERED THROUGH DISCOVERY

Young, under the authority of City of New York Police Department, reigning as a

detective, has committed numerous unlawful acts concerning the criminal arrest and prosecution

of the Plaintiff, and therefore, he and the City of New York Police Department should be joined

as party defendants to this action. Campbell and Johnson, under the authority of the City of New

Department of Education, has committed numerous unlawful acts concerning wrongful

termination, criminal arrest and prosecution of the Plaintiff and therefore, they and the City of

New York Department of Education should be joined as party defendants to this action. All

parties are a part of a municipality governed by the City of New York.

Detective Young as an experienced and senior detective did NOT thoroughly investigate

the claims made by Warrington prior to arresting the Plaintiff. Even after noticing a drastic shift

in the statement given to the intake officer when reporting the incident, in comparison to the one

given to him; he did not find that the claim(s) were frivolous. Post interviewing the Plaintiff, he

arrested her without justifiable cause. A statement given by the Plaintiff, was not lawful grounds

for an arrest, should've merely been a step in the process to investigate. He admitted to failing to make contact with the complaining victim-Warrington and the witness-Berline Bastien prior to arresting the Plaintiff. He took a statement from the victim and witness after the arrest over the phone, never having an in-person meeting to properly assess the two's demeanor in congruence with the truth. He did NOT take Plaintiff's statement over the phone, he randomly showed up at her home, before making an arrest to assess the truth and injuries. He did not conduct an over the phone interview with Bastien (to assess from a witness standpoint). He could very well have showed up "randomly" to the homes of the Bastien and Warrington if doing so would allow for a justifiable and lawful arrest, without prejudice.

Justice required knowledge and information, that he was not privy nor personally interested in, before make an unjustifiable arrest, which violated the rights and freedom of the accused. He disregarded the law. He disregarded the due process of the Plaintiff as the defendant in the matter at the time. He did not search for truth. He did use any wit when analyzing facts from fiction. He took the matter entirely too, personally. He did not meet with the complaining victim to assess injuries the entire week leading to the arrest of the Plaintiff, and even allowed, into evidence, photos from Warrington taken by Warrington, at his home, weeks later. He did NOT have these photos at the time of the arrest. So therefore, he had no evidence Warrington was assaulted, besides his admission. He was aware of Weaver's complaint made at his precinct (begotten days later), which depicted injuries, Unlike Warrington's which made no mention of injuries (begotten the night of the incident); yet did not care to relate it to the situation and allegations. Warrington, stated in his deposition, that he did NOT give a statement to officer formally nor informally regarding the incident report he transacted nor claims made. Warrington also stated he did NOT assist Detective Young, post the arrest with the increasing and extension

of charges via an over-the-phone interview Young alleged happened, while Plaintiff was being

detained. Bastien in her deposition, attested that she too, never met nor gave Detective Young a

statement regarding the incident. After being asked several times over, she finally only retracted

after a statement he supposedly took of hers, was shown to her. She stated it was odd because she

didn't recall the conversation, but agreed that it had to have transpired since it was in black and

white. All seemingly, fabricated. When asked during his deposition why, Bastien was not

arrested for being an accomplice in aiding the Plaintiff to and from the alleged assault, he said he

didn't deem it necessary. When asked why Warrington wasn't arrested after Bastien's statement

during investigation, suggested an altercation/fight and Plaintiff's report/statement both alleged

the same as well, he had no reasonable answer again.

Campbell, as an experienced teacher, principal and school administrator, sexually

harassed Plaintiff, while under his employ as a subordinate. Plaintiff, was harassed and retaliated

against by Campbell when he and his Supervisor Warrington, and colleague Johnson, plotted to

have Plaintiff terminated from their school, because of the protected activity she engaged in,

when she reported each to opposing school administration as well as the District office.

Johnson and Warrington as experienced teachers, principals and school administrators,

retaliated, harassed and terminated Plaintiff, as the result of several reporting activities she

engaged in as a mandated reporter.


## ARGUMENT AND CITATION OF AUTHORITIES

I.          **THE COURT SHOULD GRANT LEAVE TO AMEND THE COMPLAINT.**

Federal Rule of Civil Procedure 15(a)(2) applies to this Motion and provides that "a party may amend its pleading only with the opposing party's consent or the court's leave." The court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Trial courts have been instructed that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). The decision whether to grant leave to amend a pleading is within the sound discretion of the district court,[9] but as this Court has aptly recognized, "this discretion is strictly circumscribed by the proviso that 'leave [should] be freely given when justice so requires.'"[10] Therefore, a justifying reason must be apparent for denial of a motion to amend.[11] "Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."[12]

The "right" to amend is broad; it encompasses the right to make "simple changes in phraseology as well as to add a new cause or theory of action." Farrell v. Hollingsworth, 43 F.R.D 362, 363 (D.S.C. 1968). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits." Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999).

Moreover, courts regularly allow plaintiffs to amend to "amplify" previously alleged claims. See 6 Wright & Miller, Federal Practice & Proc., § 1474, n.9 (1990). The right to amend is so broad that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)) (emphasis in original).

---

8 As no scheduling order has been issued in this case, Federal Rule of Civil Procedure 16(b), which governs modifications to pretrial scheduling orders, is
   not applicable.

9 Florida Foundation Seed Producers, Inc. v. Georgia Farms Services, LLC, No. 1:10-CV-125, 2012 WL 4840809, at *21 (M.D. Ga. Sept. 28, 2012)
   (Sands, J.) (citing Nat'l. Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982)).

10 Id. (quoting Gramegna v. Johnson, 846 F.2d 675, 678 (11th Cir. 1988)).

11 Id. (citing Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993)). A court may consider such factors as undue delay, bad faith, or dilatory motive on
   the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue
   of allowance of the amendment, and futility of the amendment. Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

12 Id. (citing Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989) (internal quotation marks omitted)).

A.    **The Motion For Leave Is Timely**.

The Plaintiff has sought leave to amend the Complaint within the time prescribed by the Court's most recent scheduling order. [DE 84 (setting October 11, 2018 as the deadline to complete discovery and summary judgment).] None of the factors that may militate against granting a motion to amend is present in this case. Plaintiff moved swiftly to file these papers once the Federal Court's ruling issued and administrative proceedings resumed. Thus, there is no undue delay in Plaintiff's request to amend. The alleged facts were entirely known – and, in fact, in existence – at the time the Plaintiff filed its original complaint. Plaintiff is not seeking the amendment in bad faith or with a dilatory motive. Therefore, Defendants cannot claim that the Motion for Leave is untimely.

**B. Defendants Cannot Demonstrate Prejudice.**

Likewise, Defendants cannot claim sufficient prejudice to defeat the Motion for Leave. Although the question of whether an amendment is prejudicial is determined on a case-by-case basis, a common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

A non-prejudicial amendment is one that merely adds an additional claim based on facts already pleaded. See Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant(s) was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). Defendants will not suffer any prejudice by allowing the proposed Amended Complaint.

The additional facts pleaded in the proposed Amended Complaint relate to the Wrongful

Termination, Sexual Harassment, Harassment, Unpaid wages, Retaliation, False Arrest, and

Malicious Prosecution. There are no new theories of recovery against the original defendants,

but, instead, additional factual support has been provided for the current theories, and additional

accomplices and co-conspirators in the original complaint that were omitted and have thus been

identified. The claim that sexual harassment is not a new theory comes as a result of its previous

mentioning in the Plaintiff's Affidavit, Grievance Hearings, EEOC's Human Rights Complaint,

and all Amended Complaint.

Moreover, the proposed new defendants cannot claim any surprise by their formal

inclusion as defendants. Apparently, Campbell knew he had been named as one of the City's

witnesses (see Ex. A, at 1), and Johnson. With respect to Mr. McQueen, since October 2015 the

Plaintiff has informed him that she would likely be reinstating several dismissed causes of

actions and adding Young as a defendant as he should have been. [(See Deposition of Detective

Daniel Young, taken March 19, 2018)] Plaintiff filed a complaint with the Civilians Complaint

Review Board (CCRB), against Detective Young immediately after her arrest siting;

unprofessionalism, discrimination, and malicious-false arrest, that he was made aware of, and

investigation into that matter followed. Young, was fully aware that a complaint had been filed

against him, which perhaps leads to further legal repercussions. Additionally, two of these

additional proposed defendants (Young, moreover the NYPD) have already been deposed in this

action regarding their involvement in the malicious prosecution of the Plaintiff and were

represented by counsel (McQueen) during their respective depositions.

At his deposition, Plaintiff on record, stated to Detective Young, that he was supposed to be a

defendant to this claim, however; negligence on the behalf of her previous counsel, allowed his

identification to be omitted as an individual defendant, and a defendant represented by the City of New York and City of New York Police Department. Accordingly, this Court should grant the Plaintiff leave to file the proposed Amended Complaint adding Young as a defendant.

**C. Defendants Cannot Demonstrate Futility.**

A motion for leave to amend will be denied as futile when the proposed amendment is "clearly insufficient or frivolous on its face." Oroweat Foods Co., 785 F.2d at 510-11. The Plaintiff's proposed Amended Complaint is not futile insofar as he has further fleshed out, or amplified, known factual bases for his claims against the present defendants and against the defendants the Plaintiff seeks to add to this action. Therefore, this Court should grant the Plaintiff's motion for leave to amend the Complaint.

**II.      THE COURT SHOULD GRANT LEAVE TO SUPPLEMENT THE COMPLAINT**

Federal Rule of Civil Procedure 15(d) allows a trial court, "[o]n motion and reasonable notice, . . . [and] on just terms" to permit the pleader to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Supplementation includes the ability to add new parties. See Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). The standards employed by a trial court in ruling on a motion to amend are nearly identical to the standards to be employed in ruling on a motion to supplement. Franks v. Ross, 9

10. 4:08-cv-02753-TLW-TER Date Filed 10/27/09 Entry Number 77-1 Page 10 of 14 313 F.3d 184, 198 n.15 (4th Cir. 2002). Because the Plaintiff has satisfied her obligations to amend the Complaint, this Court should also permit the Plaintiff to supplement the Complaint.

## III. THE COURT SHOULD GRANT LEAVE TO AMEND TO JOIN

### AP-KUZALIWA CAMPBELL, AP-KENROY JOHNSON, DETECTIVE ANDREW YOUNG AND THE CITY OF THE NEW YORK.

Federal Rule of Civil Procedure 15(a) also permits a plaintiff to add or substitute parties. *See* Canty v. City of Richmond, Virginia, Police Dep't, 383 F.Supp. 1396, 1401 (D. Va. 1974), aff'd 526 F.2d 587 (4th Cir. 1975) (plaintiff granted leave to amend to add as defendants appropriate members of a police department once the police department was dismissed as a defendant); *see also* Curry v. South Carolina, 518 F. Supp.2d. 661, 667 (D.S.C. 2007). For the same reasons set forth in Section I, supra, this Court should permit the addition of the proposed defendants pursuant to Rule 15(a).

In addition, Federal Rule of Civil Procedure 20 also applies to the joinder of parties when a litigant seeks to add parties through amending the pleadings. *See* Truesdale v. Ashcroft, No. C A 405-0078-DCN-BHH, 2006 WL 4071948 (D.S.C. March 29, 2006) (construing a motion to amend brought under Rule 15 as a motion for joinder insofar as it sought to add an additional defendant). Rule 20 permits joinder of multiple defendants if:

(1) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(2) Any question of law or fact common to all defendants will arise in the action. *See* Fed. R. Civ. P. 20(a)(2). "Rule 20(a) permits 'the broadest possible scope of action consistent with fairness to the parties [and] joinder of claims, parties and remedies is strongly encouraged.'" King v. Ralson Purina Co., 97 F.R.D. 477, 479 (W.D.N.C. 1983) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966)); cf. Rumbaugh v. Winifrede R.R.Co., 331 F .2d

530, 537 (4th Cir. 1964) (stating that the foundation of Rule 20(a) lies in "avoiding a multiplicity of suits and expediting the final determination of litigation"). Joinder is appropriate if both prongs of Rule 20(a) are satisfied. See Coffin v. South Carolina Dep't of Social Servs., 562 F. Supp. 579, 592 (D.S.C. 1983). The claims that the Plaintiff seeks to assert against the City of New York (DOE, NYPD), Campbell, Johnson, and Young, arise out of the same transaction, occurrence, or series of transactions or occurrences as those currently alleged against Warrington, and, thus, joinder is appropriate. All parties are knowledgeable and were made aware of this civil action, and are employed directly by the City of New York; municipality. See Alonso v. McAllister Towing of Charleston, Inc., 595 F. Supp.2d 645, 653-54 (D.S.C. 2009).

Specifically, the Plaintiff seeks to join City of New York (DOE, NYPD), Warrington, Campbell, and Johnson, to claims for wrongful termination, harassment, sexual harassment, false imprisonment, false arrest, and malicious prosecution. Young and City of New York Police Department to claims of false imprisonment, false arrest, and malicious prosecution. Indeed, Rule 20 has enabled the joinder of defendants. See Sudderth v. National Lead Co., 272 F.2d 259 (5th Cir. 1959).

"Rule 25(d)(1) As the present amendment of Rule 25(d)(1) eliminates a specified time period to secure substitution of public officers, the reference in Rule 6(b) (regarding enlargement of time) to Rule 25 will no longer apply to these public-officer substitutions. *Subdivision (d)(2)*. (Supp. 1960); 2 Barron & Holtzoff, *Federal Practice & Procedure* §621, at 420–21 (Wright ed. 1961). Defendants cannot satisfy an issue of the amendment being "time-barred." Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs move to file the Amended Complaint within the time permitted by the Court in the scheduling order (Doc.

84). Allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

In Arnold v. Covenant Health, the Court ruled that a plaintiff retains the right to amend as a matter of course, even when requesting leave to amend, so long as he submits to the Court that he may amend his pleading as a matter of course. See Arnold v. Covenant Health, No. 3:11-CV-307, 2011 WL 5553791, at *1 (E.D. Tenn. Nov. 15, 2011). In Arnold, the plaintiff requested leave to amend, but the plaintiff also submitted to the Court that the motion to amend was filed within twenty-one days of the defendants' responsive pleadings. Id. The Court granted the motion to amend, acknowledging that the plaintiff could amend without leave of the Court and without regard to the factors typically discussed when analyzing a motion to amend pursuant to Rule 15(a)(2), such as bad faith and futility. Id.

This provision, applicable in "official capacity" cases as described above, will encourage the use of the official title without any mention of the officer individually, thereby recognizing the intrinsic character of the action and helping to eliminate concern with the problem of substitution. If for any reason it seems necessary or desirable to add the individual's name, this may be done upon motion or on the court's initiative without dismissal of the action; thereafter the procedure of amended Rule 25(d)(1) will apply if the individual named ceases to hold office. Therefore, to amend Plaintiff, will respect the rule of court if the individual names of each party are withheld so long as the municipality that represent each are admitted, ie. The City of New York's- Department of Education and Police Department.

Moreover, since the claims against all defendants are the same claims all arising from conduct concerning professional misconduct on the part of several City of New York employees,

to wrongfully terminate and prosecute the Plaintiff, in effort of keeping her silent about the reported claims of sexual harassment, harassment, and discrimination; which constituted in Plaintiff being retaliated against by the defendants listed. There will be multiple questions of law or fact common to all defendants, and, therefore, joinder is appropriate. See Alonso, 595 F. Supp.2d at 654. Having satisfied the two prongs of Rule 20, the only remaining question is whether joinder would destroy jurisdiction. See Gum v. General Electric Co., 5 F. Supp.2d 412, 414-15 (S.D. W.Va. 1998) (denying motion for leave to amend where adding parties would destroy diversity jurisdiction). It would not. Accordingly, joinder is appropriate.

## CONCLUSION

Based on the Foregoing, the Court should GRANT the Plaintiff's Motion for Leave, and thereby permit the Plaintiff to file her First Amended Complaint, which, among other things, expands upon the factual bases for the current claims; identifies and joins the City Of New York, City Department of Education, and City of New York Police Department as named parties conjoined as a municipality the City of New York; adds Detective Andrew Young, Kuzaliwa Campbell, and Kenroy Johnson as party defendants; and amends the caption of this action.

Respectfully submitted this 28th day of September, 2018.

Lashana Weaver

### CERTIFICATE OF SERVICE

I certify that, on the date set forth below, the foregoing **PLAINTIFF'S BRIEF IN**

**SUPPORT OF MOTION FOR LEAVE TO AMEND AND SUPPLEMENT COMPLAINT;**

**AND FOR JOINDER OF ADDITIONAL DEFENDANTS** was filed electronically at the U.S.

District Court- Eastern District of New York and that it is available for viewing and downloading

on the Court's ECF system by the parties. I further certify that, on the date set forth below, the

same document was served on Matthew McQueen NYC Law Department, Lead Corporate

Counsel for the Defense and Bently Warrington and The New York City Department of

Education by First Class Mail at its registered office at 100 Church Street New York, NY 10007


**Dated**: September 28, 2018                    _/s/_ Lashana Weaver
                                                Plaintiff/Pro Se'

# EXHIBIT
# 1

21

Weaver v. Warrington

1    For a person to say go in and get a negative rating,

2    for whatever his motive is, he keeps that to himself.   When

3    Ms. Bascombe says I'm not going to do that --

4    THE COURT:  Are there other people -- let me get to

5    Campbell because I'm struggling with your complaint.   In

6    paragraph 15 I can't figure out what this is, whether you are

7    alleging a comparator, meaning alleging, attempting to allege

8    someone else who was similarly situated to your client who did

9    not receive the unfavorable treatment she got.   I can't figure

10   out what you are doing here.  You will tell me what it is.

11   You allege in paragraph 15 that Allen, you have

12   already mentioned this, like threw a student across the room.

13   He didn't get a U rating.   Then you say Mr. Campbell, an

14   assistant principal, had subjected the plaintiff to sexual

15   harassment.   Your client?

16   MS. MYATT:  My client.

17   THE COURT:  But that's -- okay.  When plaintiff

18   complained to Warrington he discouraged her not to pursue

19   charges against Mr. Campbell.   I'm quoting from your complaint.

20   MS. MYATT:  Right.

21   THE COURT:  Telling her there would be consequences to

22   her complaint.  Specifically, that he would have to release

23   Mr. Campbell or her or both of them from his employ.

24   MS. MYATT:  So, if I may.

25   THE COURT:  I mean, hang on.

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

```
                                                                22
                        Weaver v. Warrington

 1          MS. MYATT:  All right.

 2          THE COURT:  Then it says Mr. Kenroy Johnson, the

 3   assistant -- this is a quote -- Mr. Kenroy Johnson, the

 4   assistant principal, it was public known he was unhappy with

 5   his performance, and Mr. Warrington never disciplined him and

 6   Defendant Warrington -- was forced by Defendant Warrington to

 7   give plaintiff the U rating.

 8          What is your complaint about Campbell?

 9          MS. MYATT:  It's a comparison.  I'm comparing the male

10   teachers.  So, for example, we have Mr. Campbell, assistant

11   principal.

12          THE COURT:  Right.

13          MS. MYATT:  With respect to the assistant principal,

14   Mr. Campbell, he subjected my client, Ms. Weaver, to sexual

15   harassment.  He was not disciplined, he was not given a U

16   rating, he wasn't terminated.  Nothing occurred with respect to

17   Mr. Campbell.

18          THE COURT:  Nor was he sued by your client.

19          MS. MYATT:  Granted.

20          THE COURT:  Go ahead.

21          MS. MYATT:  With respect to Mr. Johnson, Mr. Johnson,

22   the reason I cite him, again, another example, because he is a

23   male teacher, and Mr. Warrington or Principal Warrington wasn't

24   happy with principal -- Assistant Principal Johnson's

25   performance in the school and he never -- meaning Principal
```

MICHELE NARDONE, CSR, RPR, CRR -- Official Court Reporter

23

Weaver v. Warrington

1    Warrington -- never did anything to either discipline, give a U

2    rating, or anything of that nature to principal -- Assistant

3    Principal Johnson.  So I'm making a comparison with respect to

4    the male teachers versus my client.

5        THE COURT:  See, my understanding is when you use

6    comparators like this, there needs to be, if -- it doesn't have

7    to be the precise configuration of facts surrounding your own

8    client, but they need to be sort of similarly situated.  An

9    ideal comparator for you would be if one of these men in the

10   school complained about the inappropriate relationship between

11   Warrington and Reid and yet those men were not subjected to any

12   adverse employment consequences.  Then I would think, okay,

13   plausible inference here could be at the 12(b) stage.

14   Plausible inference is she got dinged because she is a woman.

15       But you are setting up as a comparator -- I have never

16   seen this before -- a man who subjected your own client to sex

17   discrimination but he wasn't sufficiently -- she was talked out

18   of making a complaint against him, and that gives rise to an

19   inference because she complained about the relationship with

20   Reid and he took action against her.  It was based on her sex?

21   I'm not getting it.

22       Do you understand?  I'm not following the trail you

23   want me to follow in terms of permissible inferences.

24       MS. MYATT:  I do follow you.  I guess I'm trying to

25   articulate it because I used the male comparisons for a reason.

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

24

Weaver v. Warrington

1   I think your Honor -- well, maybe you don't.  I was going to

2   say I think you understand why I am making the comparison.

3         THE COURT:  I understand why you are trying, but they

4   are not similarly situated people.  They are not complaining to

5   him about his inappropriate relationship.

6         MS. MYATT:  Right.

7         THE COURT:  They are actually sexually harassing your

8   own client, according to this.

9         MS. MYATT:  At least one of them.

10         THE COURT:  But you are not suing him.

11         MS. MYATT:  Correct.  That's for another time, another

12   situation.  I wasn't involved there.

13         THE COURT:  Okay.  Anything else?

14         MS. MYATT:  With respect -- I think your Honor has

15   articulated my position with respect to the malicious

16   prosecution claim.  So, no, I would have nothing further.

17         THE COURT:  Anything further from the defendants?

18         MR. LEON:  Not unless your Honor has a specific

19   question.

20         THE COURT:  All right.  The motion to dismiss is

21   granted in part.  I'm not persuaded to the extent the

22   allegations in this complaint purport to make out a claim of

23   sex discrimination either in violation of Title VII or the

24   parallel state causes of action suffice.

25         The essence of the claim remains there are these

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

# EXHIBIT 2



**Department of
Education**

Courtenaye Jackson-Chase
*General Counsel*

RECEIVED

MAR 3 1 2014

March 28, 2014

BROOKLYN REGIONAL OFFICE

**VIA REGULAR MAIL AND FAX TO (718) 722-2869**
William LaMot
Regional Director
New York State Division of Human Rights
55 Hanson Place, Room 1084
Brooklyn, New York 11217

     Re:    **Lashana Weaver v. City of New York, Department of Education
Case No. 10166896**

Dear Mr. LaMot:

This statement is submitted on behalf of the New York City Department of Education ("DOE" or "Department") in response to the complaint submitted by former substitute teacher Lashana Weaver ("complainant"), alleging discriminatory employment practices based on retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYHRL"), N.Y. Executive Law §296, *et seq.* The DOE denies each and every allegation of discriminatory employment practices contained in the complaint. The New York State Division of Human Rights ("SDHR") should find no probable cause of discrimination as complainant fails to make out a prima facie case of discrimination.

Complainant specifically alleges that she was retaliated against because 1) her classroom was frequently observed by the principal; 2) an assistant principal told her that the principal directed the assistant principal to give complainant an unsatisfactory rating; 3) she was terminated by the principal; 4) she received a letter stating that she was being investigated for verbal abuse of a student; 5) she received an unsatisfactory rating; and 6) she was not paid at the increased rate for substitute teachers who work for 30 or more consecutive days.

## STATEMENT OF FACTS

Complainant was a substitute teacher for the DOE. She is currently not eligible to work as a substitute teacher because she failed to report a November 2013 felony arrest. Between December 3, 2012 and April 30, 2013, complainant was assigned to M.S. 246 Walt Whitman (17K246, "Walt Whitman"). Bentley Warrington is the principal of Walt Whitman. At the end of the 2012-2013 school year, Principal Warrington rated complainant's performance as unsatisfactory because of a <u>substantiated allegation of verbal abuse.</u> Principal Warrington denies directing an assistant principal to give complainant an unsatisfactory rating in order to have a reason to terminate her.

While assigned to Walt Whitman, complainant committed verbal abuse of a student. On April 23, 2013, Complainant threatened and cursed at a student who had gone through complainant's phone without permission. The student and an assistant principal were having a meeting about the incident when complainant came into the room. Complainant told the student that she would "beat [her] ass." She was escorted out of the room by the assistant principal while still saying "I will beat your ass in front of these DOE cameras." See letter to file dated May 6, 2013, annexed as Exhibit "A."

Around the end of April, Principal Warrington was informed that complainant's photograph was on the website www.mugshots.com for two prior arrests in Florida, the first in 2008 for disorderly conduct and the second in 2009 for grand theft. On April 30, 2013, Principal Warrington told complainant that he no longer wished to use her as a substitute at the school. However, later that day, after consulting with the school's counsel, Principal Warrington informed complainant that she could remain working as a substitute at the school, but that he would be informing the appropriate DOE investigatory authorities of her prior arrests. Complainant chose not to return to work at Walt Whitman rather than to have the investigation opened.   *wrong date; it was the 26th*   *too many events transpired in one week; striking*

*✳ Complainant failed to include certain pertinent facts in her SDHR complaint that further evidence her professional misconduct and an ongoing vendetta against Principal Warrington. Specifically, complainant failed to inform SDHR that on November 8, 2013, complainant was arrested after assaulting Principal Warrington outside of his home and attempting to steal his cell phone. She was charged with Attempted Robbery in the 3rd Degree, a Class D felony, Assault in the 3rd Degree, a Class A misdemeanor, Stalking in the 4th Degree, a Class B misdemeanor, and two counts of Harassment in the 2nd Degree, a violation. See arrest report, annexed hereto as Exhibit "B." These charges are still pending. Complainant's most recent Criminal Court appearance was on March 24, 2014 and her next Criminal Court appearance is scheduled for April 3, 2014.

Pursuant to Chancellor's Regulation C-105, complainant was required to report any arrest to the DOE. She never reported the felony arrest for assaulting Principal Warrington. After the DOE was notified of her arrest by the New York State Division of Criminal Justice Services, the DOE sent complainant a letter dated November 19, 2013 asking her to provide paperwork relevant to the arrest. To date, complainant has ignored the letter and has neither notified the DOE of the arrest nor provided the requested paperwork. See letter dated November 19, 2013, annexed as Exhibit "C." Accordingly, a problem code has been entered in complainant's file and she is not currently eligible to work as a substitute teacher for the DOE.

Complainant was not eligible to be paid at the rate of a Z-status substitute teacher. The per diem rate at which a substitute teacher is paid is dependent on her payroll status. Complainant alleges she should have been on paid at the higher Z-status rate, but instead she was paid at the lower O-status rate. Substitute teachers who are occasional per diem day-to-day substitutes are on O-status. Substitute teachers become Z-status when they are long term per diem substitutes after 30 consecutive days or more working in the same position covering the same absentee. In order to qualify for Z-status, the substitute teacher must be covering an absent

teacher, not a vacancy.  In this case, complainant was hired as a substitute teacher at Walt Whitman to cover a vacant position, not to fill in for an absent teacher.  Accordingly, she was not eligible to receive pay at the increased Z-status rate even though she worked for more than 30 consecutive days.

## DISCUSSION

To establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, a complainant must generally establish that: 1) she participated in a protected activity by opposing a practice made unlawful by Title VII; 2) the employer was aware of that activity; 3) the employer subjected the employee to some adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action. Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Complainant cannot satisfy the first, second, or fourth elements of this framework.

Complainant has not participated in a protected activity.  In her complaint, complainant alleges that the retaliatory conduct began after she had "a discussion with [another substitute teacher]" during which complainant "expressed [her] disapproval for [the other substitute's] inappropriate romantic relationship with Mr. Warrington, the principal of the school." Expressing disapproval to a friend about her friend's alleged romantic relationship does not constitute a protected activity within the context of Title VII or the NYHRL.  Title VII prohibits retaliation or discrimination against any individual because she has opposed any practice made unlawful by this chapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.  See 42 U.S.C. §2000e-3(a).  The NYHRL prohibits retaliation or discrimination against any person because she has opposed any practices forbidden under the article or because she has filed a complaint, testified or assisted in any proceeding under this article.  See N.Y. Exec. Law §296(7).  A consensual, romantic relationship is not a practice made unlawful by Title VII or the NYHRL and, thus, allegedly expressing disapproval of such a relationship cannot be a protected activity. "An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law." Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) Not only does such a relationship not violate the law, it does not even violate DOE policy which does not contain an express prohibition on fraternization.

Complainant has not presented any evidence that any person other than her friend, another occasional substitute teacher, was aware of the conversation in which she allegedly expressed disapproval about her friend's alleged relationship with Principal Warrington.  She thus has not established that the DOE was aware of the alleged protected activity.

Complainant also cannot establish that there was a causal connection between the alleged protected activity (of which the DOE was not aware) and what she alleges were adverse employment actions.   The Supreme Court recently held in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), that a Title VII retaliation complainant "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  This means that the complainant must show that the employer would not have taken the action "in the absence of" the claimant's protected activity.  Complainant has not made such

a showing here.  In this case, complainant presents no evidence other than timing to support her claim of causality which is insufficient as a matter of law.  "As a matter of law, 'the mere fact that the incidents of which [a plaintiff] complains occurred after…grievances were filed does not create an issue of fact as to causality.'" Feliciano vs. Alpha Sector, Inc., 2002 U.S. Dist. LEXIS 12631, 35 (S.D.N.Y. 2002).

## CONCLUSION

Based upon the reasons discussed above complainant has wholly failed to present any evidence of retaliation.  Therefore, the complaint should be dismissed in its entirety.

Sincerely,

Rebecca Chasan
Agency Attorney

Human Rights
"Exhibit A"

---



**Department of Education**

## THE NEW YORK CITY DEPARTMENT OF EDUCATION

Dennis M. Walcott, *Chancellor*

DIVISION OF HUMAN RESOURCES
65 Court Street – Room 200
Brooklyn, NY 11201

Tuesday, November 19, 2013

LASHANA WEAVER
8920 AVENUE B, 1 FL,
BROOKLYN,NY 11236

| | |
|---|---|
| SS#: | XXXXX7559 |
| PRP#: | 107972 |
| TITLE: | SUB TEACHER |
| ASSIGNMENT: | ALL LOC. |

To: LASHANA WEAVER

It was reported that you were the subject of an arrest on:

Date:       11/15/2013

CHARGE:   ATT ROBBERY - 3RD // ASSAULT - 3RD // STALKING - 4TH // HARASSMENT-
          2ND//HARASSMENT-2ND
COUNTY:   KINGS

NYSID#:   11157409H

Under Chancellor's Regulation C-105, you are required to provide this office with the following documents for the arrest listed above:

1. A copy of the **criminal complaint/police report** (to be submitted immediately), and
2. An original **Certificate of Disposition** (Disposition must include an embossed seal and be submitted within three (3) business days of the case's outcome).

Please obtain the documents from the court clerk in the county in which the arrest occurred.

This material may be delivered in person or sent by mail to:
NYC Department of Education
Office of Personnel Investigation
65 Court St., Room 200
Brooklyn, NY 11201

**If corresponding by mail, please write your Social Security number on all documents and include a copy of this letter.**

Thank you for your prompt attention to this matter.

Office of Personnel Investigation - Room 200
Phone: (718) 935-2665 * Fax (718) 935-4366/5778

Civil Event Hit Notice                                                    Page 1 of 3

# Arrest Notification

**To ORI: NY921540Z**
**NYC Department of Education - Personnel Security - November 15, 2013 02:07 pm**
**NYSID: 11157409H**

*See Teacher*

According to our records the following individual has a job or license application on file.
This notification was disseminated due to receipt of an Arrest Fingerprint card by DCJS.

### Arrest/Charge Information
Arrest Date:November 15, 2013 11:10 am (11:10:00)



| | |
|---|---|
| Name: | LASHANA J WEAVER |
| Date of Birth: | December 13, 1987 |
| Sex: | Female |
| Race: | Black |
| Ethnicity: | Not Hispanic |
| Height: | 5' 04" |
| Weight: | 130 |
| SSN: | 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 |
| Age at time of crime/arrest: | 25 |
| Address: | 8920 AVENUE B, BROOKLYN, NY |
| Fax Number: | K73705 |
| Place of Arrest: | NYCPD 63 |
| Arrest Type: | Unknown |
| Date of Crime: | November 08, 2013 |
| Place of Crime: | NYCPD 63 |
| Criminal Justice Tracking No.: | 66344178R |
| Arresting Agency: | NYCPD PCT 063 |
| Arresting Officer ID: | 932084 |
| Arrest Number: | K13702150 |
| Arraignment: | Kings County Criminal Court |

**Information Associated with Image**
Event Date: November 15, 2013

Arrest Charges:

-- Attempted Robbery-3rd Degree

| PL160.05 | | Class D Felony | Degree 3 | NCIC 1299 |
|---|---|---|---|---|

-- Assault 3rd Degree: With Intent To Cause Physical Injury

| PL120.00 | Sub 01 | Class A Misdemeanor | Degree 3 | NCIC 1399 |
|---|---|---|---|---|

-- Stalking 4th: Cause Fear Of Material Harm To Health,Safety,or Property

| PL120.45 | Sub 01 | Class B Misdemeanor | Degree 4 | NCIC 1316 |
|---|---|---|---|---|

-- Harassment-2nd:Follow Person

| PL240.26 | Sub 02 | Violation | Degree 2 | NCIC 7099 |
|---|---|---|---|---|

-- Harassment-2nd Degree: Physical Contact

| | | | Degree | NCIC |
|---|---|---|---|---|

# EXHIBIT
# 3

THE LAW OFFICE OF

# RENÉ MYATT

204 04 HILLSIDE AVENUE

SECOND FLOOR

HOLLIS, NEW YORK 11423

TELEPHONE (718) 468-3588    FACSIMILE (718) 468-5731

myattlegal@aol.com

**VIA EMAIL**

March 29, 2015

Lashana Weaver

Re:    **Weaver v. Warrington and DOE and Bentley Warrington**

Dear Ms. Weaver:

My appearance at court was not a discovery meeting, it was an initial conference before the court. After the judge spoke to both sides about their position in the case, the attorney for DOE communicated to the court that they would like to continue with the case against Bentley Warrington for false arrest.

I advised the attorney for DOE that you and I are very committed to the termination as well as the false arrest claims and we are not prepared to let DOE out of the case at this time. The judge set a window for discovery of five months indicating that this is not a complicated case and should not take that long.  Both sides have talked and within the discovery process there will be discussions about settlement.

At this juncture, we are proceeding with our case against the DOE and Bentley Warrington.

I have also provided you with a copy of the Summons and Complaint and the Initial Conference documents.

Very truly yours,

René Myatt

RM/jc

Enclosures

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LASHANA WEAVER,

Plaintiff,

-against-

BENTLEY WARRINGTON and CITY OF NEW
YORK DEPARTMENT OF EDUCATION,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' RULE 26(a)
INITIAL DISCLOSURES**

14 Civ. 7097 (JG) (VVP)

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, defendants

provide the following information as required:

### INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)(A)

(A) In General.   Except as exempted by Rule 26(a)(1)(B) or as otherwise

stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to

the other parties:

**Rule 26(a)(1)(A)(i):**

(i) the name and, if known, the address and telephone number of each individual

likely to have discoverable information – along with the subjects of that information - that the

disclosing party may use to support its claims or defenses, unless the use would be solely for

impeachment;

**Defendants' Response to Rule 26(a)(1)(A)(i):**

The following individuals may have information that defendants may use to

support their defenses in this action:

1. Kesha Bascombe:    Assistant Principal: supervised plaintiff; plaintiff's
   performance and efforts to improve her performance.

2. Kuzaliwa Campbell:   Assistant Principal: supervised plaintiff; plaintiff's performance and efforts to improve her performance; conducted portions of DOE's Office of Special Investigation's ("OSI") investigation regarding plaintiff.

3. James Allen:          Dean: oversaw school operations; received complaints against plaintiff.

4. Kenroy Johnson:     Assistant Principal: supervised plaintiff; plaintiff's performance and efforts to improve her performance; conducted portions of DOE's Office of Special Investigation's investigation regarding plaintiff.

5. Clorita Mayers:      Department Coach: supervised plaintiff; plaintiff's performance and efforts to improve her performance.

6. Nickesh Lyle:         Coach: supervised plaintiff; plaintiff's performance and efforts to improve her performance.

7. Nicola Ford:          Teacher who had an altercation with plaintiff.

8. Frederick Underwood:        Principal of plaintiff's prior teaching assignment: supervised plaintiff; plaintiff's performance.

9. Berlin Bastien:       Teacher: witness to plaintiff's assault of defendant Warrington.

The above individuals are current or former employees of defendant New York City Department of Education ("DOE"), and these individuals should be contacted only through the undersigned attorney.

**Rule 26(a)(1)(A)(ii):**

**(ii)** a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**<u>Defendants' Response to Rule 26(a)(1)(A)(ii)</u>:**

       The following documents may be used to support defendants' claims or defenses and are in the possession, custody or control of defendants and will be produced pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure:

1. Plaintiff's personnel file, maintained by DOE.

2. Plaintiff's Equal Employment Opportunity file, maintained by DOE.

3. Plaintiff's OSI File, maintained by DOE.

4. Photographs of Mr. Warrington's injuries following his assault by plaintiff, maintained by Mr. Warrignton.

**<u>Rule 26(a)(1)(A)(iii)</u>:**

       **(iii)**    a computation of any category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**<u>Defendants' Response to Rule 26(a)(1)(A)(iii)</u>:**

       This section is not applicable to defendants.  Defendants reserve their right to seek costs and fees in this action if appropriate.

**<u>Rule 26(a)(1)(A)(iv)</u>:**

       **(iv)**    for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**<u>Defendants' Response to Rule 26(a)(1)(A)(iv)</u>:**

       This section is not applicable to defendants.

Defendants reserve their right to amend or supplement these responses.

Dated:      New York, New York
            March 17, 2015

                                        **ZACHARY W. CARTER**
                                        Corporation Counsel of the
                                           City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-140
                                        New York, New York 10007-2601
                                        (212) 356-2629
                                        dleon@law.nyc.gov


                         By:        _____
                                        Daryl Gregory Leon
                                        Assistant Corporation Counsel

To:    **THE LAW OFFICES OF RENE MYATT**
       Attorney for Plaintiff
       204-04 Hillside Avenue, 2nd Floor
       Hollis, New York 11423

- 4 -

14 Civ. 7097 (JG) (VVP)

| UNITED STATES DISTRICT COURT |
| EASTERN DISTRICT OF NEW YORK |

LASHANA WEAVER,

                                                        Plaintiff,

                        -against-

BENTLEY WARRINGTON, et al.,

                                                        Defendants.

---

**DEFENDANTS' RULE 26(a)**
**INITIAL DISCLOSURES**

---

# ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-140
New York, N.Y. 10007-2601


Of Counsel: Daryl Gregory Leon
Tel: (212) 356-2629



Matter No. 2014-044624

---

*Due and timely service is hereby admitted.*

*New York, N.Y.* .........................................., *201* ......

......................................................................................

*Attorney for* ...............................................................

USMS

Lashana J. Weaver
115-47 148th St
Jamaica, NY 11436
"Plaintiff-Pro Se"

*FILED*
2018 SEP 28 PM 10:06

U.S. DISTRICT COURT
E.D.N.Y.

U.S. Federal Court-Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

Attn: Judge Vitaliano
Magistrate Judge Tiscione

Please Note: Have Pro Se Office Review First
Thank You!!
To admit to Docket as well

call it     (239) 850-5368
necessary: